**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **RECO EUGENE SELLS,** | ) |
| | ) |
| **Petitioner,** | ) |
| | ) |
| **v.** | )    **Case No. 14-CV-139-JED-TLW** |
| | ) |
| **JOE M. ALLBAUGH, Director,**[1] | ) |
| | ) |
| **Respondent.** | ) |

<u>**OPINION AND ORDER**</u>

Before the Court is Petitioner's 28 U.S.C. § 2254 habeas corpus petition (Doc. 1). Petitioner

is a state inmate and appears *pro se*. Respondent filed a response (Doc. 7) to the petition and

provided the state court record (Docs. 7, 8, 9, 10, 11) for resolution of the claims raised in the

petition. Petitioner filed a reply (Doc. 14) to the response. For the reasons discussed below, the

petition for writ of habeas corpus shall be denied.

*BACKGROUND*

On November 11, 2009, thirty-one (31) year old Reco Eugene Sells (Petitioner) attended his

son's middle school football practice in Tulsa, Oklahoma. Also present at the practice was the

team's trainer, or "water girl," thirteen (13) year old K.G.[2] While K.G. talked to a friend on her cell

phone, Petitioner approached K.G. and asked if he could borrow her phone. Petitioner took the

---

[1]    Petitioner is in custody at Davis Correctional Facility, a private prison. Pursuant to Rule 2(a), *Rules Governing Section 2254 Cases in the United States District Courts*, the proper party respondent in this matter is Joe M. Allbaugh, Director of the Oklahoma Department of Corrections. Therefore, Joe M. Allbaugh, Director, is substituted in place of Robert C. Patton, Director, as party respondent. The Clerk of Court shall note the substitution on the record.

[2]    K.G. turned fourteen (14) years old on November 15, 2009.

phone from K.G., walked away, and used the phone to call someone.  After about two (2) minutes, Petitioner returned the phone to K.G.

Later that afternoon, about thirty (30) minutes after returning home, K.G. began receiving texts on her cell phone from Petitioner.  Petitioner asked "is it okay if I text you?"  K.G. responded "sure."  The next day, November 12, 2009, during school, Petitioner again texted K.G. saying "good morning" and "hello sunshine."  Because the texting made her uncomfortable, K.G. told the football coach and her counselor about receiving the texts.  Her counselor told K.G. to tell her mother about the texts.  After learning that her thirteen (13) year old daughter had been receiving texts from a thirty-one (31) year old man, K.G.'s mother, Karen Gilbert, went to the Education Service Center to talk to the campus police chief.  He advised Mrs. Gilbert to keep K.G.'s phone to monitor the texts.  The texting continued.  Mrs. Gilbert became concerned with the frequency and the content of the texts.  For example, Petitioner texted "getting out of the shower and thinking of you," "good night, sunshine," and "good night, sexy."

On November 18, 2009, K.G. and her parents met with detectives from the cyber crimes division of the Tulsa Police Department.  With the permission of K.G.'s parents, Detective Scott Gibson took possession and control of K.G.'s cell phone.  Detective Gibson adopted K.G.'s persona and responded to Petitioner's texts as if he were a fourteen (14) year old K.G.  To preserve the cell phone data, cyber crimes detectives used computer software to download the data and prepared a data log, arranging the texts in chronological order.

In early December 2009, Petitioner's texts became sexually explicit.  On December 3, 2009, Petitioner texted that he "will send you pic of my body," and then sent four (4) pictures of his erect penis.  On December 4, 2009, Petitioner sent texts stating "I want to lick you from head 2 toe babe

2

til u say stop," and "yr butt is sexy baby yr body is hot." On December 5, 2009, he sent another picture of his penis and texted "I want to kick with u all nite babe." Also, on December 5, 2009, Petitioner texted "I will kiss u suck on yr tits, lick yr pussy, suck on yr toes, then stick it in nice & slow." Petitioner sent texts agreeing to meet K.G. alone at a Tulsa park on Friday, December 11, 2009, for the purpose of having sexual intercourse. When Petitioner arrived at the agreed location, he was arrested by Tulsa Police officers. Detective Gibson read Petitioner his *Miranda* rights, Petitioner waived those rights and agreed to talk. Detective Gibson audiotaped his conversation with Petitioner.

As a result of those events, Petitioner was charged in Tulsa County District Court, Case No. CF-2011-3557, with three (3) counts of Lewd or Indecent Proposal to a Child (Counts I, II, III), and Facilitating Sexual Conduct with a Minor by Use of a Computer (Count IV). At the conclusion of the two stage jury trial, Petitioner's jury found him guilty as charged and recommended sentences of ten (10) years imprisonment and a $1,000 fine on Counts I and III, fifteen (15) years imprisonment and a $2,000 fine on Count II, and five (5) years imprisonment on Count IV. On September 19, 2011, the trial judge sentenced Petitioner in accordance with the jury's recommendation and ordered the sentences to be served consecutively. *See* Doc. 8-6 at 6. During trial proceedings, Petitioner was represented by attorney Beverly Atteberry.

Petitioner appealed his convictions to the Oklahoma Court of Criminal Appeals (OCCA). On direct appeal, Petitioner, represented by attorney Matthew D. Haire, raised nine (9) propositions of error, as follows:

> Proposition 1: The State failed to prove beyond a reasonable doubt that Appellant was not entrapped

3

Proposition 2:  Errors in jury instructions required Appellant's convictions and sentences to be reversed.

Proposition 3:  Appellant's convictions of Counts 2, 3, and 4 violate Okla. Stat. tit. 21, § 11; Counts 2 and 3 violate the state and federal ban on double jeopardy.

Proposition 4:  Appellant's convictions must be reversed because the trial court failed to instruct the jury on the lesser-included misdemeanor offense of Using Electronic Communications to Make Obscene, Threatening or Harassing Comments.

Proposition 5:  Appellant's sentences for these convictions are excessive.

Proposition 6:  Appellant was denied the effective assistance of counsel.

Proposition 7:  Prosecutorial misconduct infected the proceedings and violated Appellant's state and federal rights to due process.

Proposition 8:  Error in the admission of evidence during trial requires reversal of Appellant's convictions.

Proposition 9:  Cumulative error requires reversal of Appellant's convictions and sentences.

(Doc. 7-1).  On October 8, 2012, in an unpublished summary opinion filed in Case No. F-2011-868, the OCCA denied relief and affirmed the Judgment and Sentences of the trial court.  *See* Doc. 7-3. Petitioner did not file a petition for writ of *certiorari* at the United States Supreme Court.

On June 18, 2013, Petitioner filed an application for post-conviction relief in state district court.  *See* Doc. 14 at 10.  On July 31, 2013, the state district judge denied the requested relief.  *See* Doc. 7-4 at 4-8.  Petitioner appealed, raising three (3) propositions of error, as follows:

Proposition 1:  That his fundamental right to a fair trial were [sic] violated by the introduction of unauthenticated documentation to the jury.

Proposition 2:  Hearsay was improperly introduced at trial in support of the unauthenticated documentation.

Proposition 3:  The police failed to properly execute warrant to search Petitioner's home or belongings.

4

*Id.* at 1-2.  On January 9, 2014, in Case No. PC-2013-783, the OCCA affirmed the denial of post-conviction relief (Doc. 7-5).

On March 21, 2014, Petitioner filed his federal petition for writ of habeas corpus (Doc. 1), along with a supporting brief (Doc. 2).  Petitioner raises the following grounds of error:

Ground 1:    Petitioner's conviction is in violation of Okla. Stat. tit. 21, § 11; Okla. Const. art. II, § 21; and the Fifth Amend. double jeopardy clause.

Ground 2:    Petitioner was improperly, and unlawfully, convicted for crimes under general provisions instead of controlling specific provisions.

Ground 3:    Petitioner's fundamental right to a fair trial have [sic] been violated.

Ground 4:    Hearsay testimony was improperly presented in support of unauthenticated documentation.  Hearsay was only attempt to authenticate documents.

Ground 5:    No warrant was issued, nor was a proper service of warrant made on any party, in violation of Petitioner's 4th Amendment rights.

Ground 6:    The State failed to prove beyond a reasonable doubt that Petitioner was not entrapped.

Ground 7:    Errors in jury instructions require Petitioner's convictions and sentences to be reversed.

Ground 8:    Jury instructions were contradictory and confusing, and unconstitutionally shifted the burden of proof.

(Doc. 1).  Respondent filed a response (Doc. 7) to the petition and asserts that Petitioner is not entitled to relief either under 28 U.S.C. § 2254(d) or because his claims are procedurally barred.

## *ANALYSIS*

### A.  Exhaustion/Evidentiary Hearing

Before addressing Petitioner's habeas claims, the Court must determine whether Petitioner meets the exhaustion requirement of 28 U.S.C. § 2254(b).  *See Rose v. Lundy*, 455 U.S. 509, 510 (1982).  With the exception of Ground 2 and part of Ground 1, Petitioner's claims were presented

to the OCCA on either direct or post-conviction appeal and are exhausted.  Ground 2 and part of Ground 1 are unexhausted.  However, in light of the procedural posture of this case, the Court finds an absence of available State corrective process, *see* 28 U.S.C. § 2254(b)(1)(B), and those claims are not barred by the exhaustion requirement.  Nonetheless, as discussed in Part C, below, habeas corpus relief on those claims is denied based on an anticipatory procedural bar.

The Court also finds that Petitioner is not entitled to an evidentiary hearing.  *See Cullen v. Pinholster*, 563 U.S. 170, 184-85 (2011); *Williams v. Taylor*, 529 U.S. 420 (2000).

## B.  Claims adjudicated by the OCCA

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions.  Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  *See* 28 U.S.C. § 2254(d); *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011); *Williams v. Taylor*, 529 U.S. 362, 386 (2000); *Neill v. Gibson*, 278 F.3d 1044, 1050-51 (10th Cir. 2001).  "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme Court's] decisions."  *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (citations omitted).

When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner.  *See Bell v. Cone*, 535 U.S. 685, 699 (2002); *Hooper v. Mullin*, 314 F.3d 1162, 1169 (10th Cir. 2002).

An unreasonable application by the state courts is "not merely wrong; even 'clear error' will not suffice." *White*, 134 S. Ct. at 1702 (citing *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003)). The petitioner "'must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* (quoting *Richter*, 562 U.S. at 103); *see also Metrish v. Lancaster*, 133 S. Ct. 1781, 1787 (2013). Section 2254(d) bars relitigation of claims adjudicated on the merits in state courts and federal courts review these claims under the deferential standard of § 2254(d). *Richter*, 562 U.S. at 98; *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).

Additionally, Oklahoma defines plain error as "an error which goes to the foundation of the case, or which takes from a defendant a right essential to his defense," *Simpson v. State*, 876 P.2d 690, 698 (Okla. Crim. App. 1994), and "impinges on the fundamental fairness of trial." *Cleary v. State*, 942 P.2d 736, 753 (Okla. Crim. App. 1997). Addressing Oklahoma's definition of plain error, the Tenth Circuit found that there was "no practical distinction between the formulations of plain error . . . and the federal due-process test, which requires reversal when error so infused the trial with unfairness as to deny due process of law." *Thornburg v. Mullin*, 422 F.3d 1113, 1125 (10th Cir. 2005) (citation and internal quotation marks omitted). Therefore, when the OCCA applies the plain error standard of review, this Court must defer to its ruling unless it "unreasonably appli[ed]" the test. *Id.* (internal quotation marks omitted).

Here, Petitioner presented part of Ground 1 and Grounds 6, 7, and 8 to the OCCA on direct appeal. Because the OCCA addressed those claims on the merits, the Court will review those claims under the standards of § 2254(d).

### 1.  Double punishment/double jeopardy (Ground 1)

As his first ground of error, Petitioner alleges that his convictions violate Okla. Stat. tit. 21,

§ 11, the Oklahoma Constitution, and the double jeopardy clause of the United States Constitution.

*See* Doc. 1 at 4.  On direct appeal, Petitioner claimed that his convictions on Counts 2, 3, and 4

violated the state prohibition on multiple punishments, and that his convictions on Counts 2 and 3

violated the state and federal ban on double jeopardy.[3]  *See* Doc. 7-1 at 30.  The OCCA reviewed

these claims for plain error and found as follows:

> Appellant's convictions in Counts II, III and IV do not violate the provisions of 21 O.S. 2001, § 11.  While the felony Informations use similar but not identical language and include the same time frame for the commission of the offenses, each Information describes a different violation of the statute.  Each violation was supported by evidence presented at trial.  That evidence showed separate and distinct crimes were committed on different days and therefore, properly charged as separate counts.  Finding no error in Appellant's convictions on the three separate counts, we find no plain error.
>
> The convictions in Counts II and III also do not violate the prohibitions against double jeopardy.  Here, we have allegations of multiple violations of the same criminal statute.  Multiple convictions based on the same set of facts may violate the constitutional protection from double jeopardy.  However, when dissimilar proof is used to prove each count, there is no double jeopardy violation.  The fact that crimes are committed in rapid succession does not negate separate crimes as long as a separation does exist.  The evidence shows the commission of two separate crimes on separate days for which Appellant may be legally convicted and punished.  Finding no error, we find no plain error.

(Doc. 7-3 at 4-5 (citations omitted)).

Petitioner's claim that he has suffered multiple punishments in violation of Oklahoma law

shall be denied because it is not cognizable on federal habeas corpus review.  A federal habeas court

---

[3]    In his habeas petition, Petitioner also claims that his conviction on Count 4 violates double jeopardy.  That claim was not raised on either direct or post-conviction appeal and is unexhausted.  However, as discussed in Part C below, the claim is procedurally barred.

has no authority to review a state court's interpretation or application of its own state laws. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (emphasizing that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions). Instead, when conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *Id.*; 28 U.S.C. §§ 2254(a). Petitioner's multiple punishment claim, insofar as it is based on Oklahoma law, is not cognizable in this federal habeas corpus proceeding and shall be denied on that basis.

Furthermore, Petitioner is not entitled to relief under § 2254(d) on his double jeopardy claim. The Double Jeopardy Clause protects against multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989). This protection is limited to ensuring "that the sentencing discretion of courts is confined to the limits established by the legislature," for it is the legislature that is vested with "the substantive power to prescribe crimes and determine punishments." *Ohio v. Johnson*, 467 U.S. 493, 499 (1984).

In this case, Petitioner's convictions are not violative of the Double Jeopardy Clause as multiple convictions based upon a single criminal act, as argued by Petitioner. In both Counts II and III, Petitioner was charged with Lewd or Indecent Proposal to a child under 16 years of age. For Count II, the charged conduct was "asking, encouraging, enticing [K.G.] to have sexual relations with him." *See* Doc. 8-4, Tr. Vol. I at 298-99. As to Count II, Petitioner's jury was instructed that:

> No person may be convicted of lewd or indecent proposals to a child under sixteen unless the State has proved beyond a reasonable doubt each element of the crime. These elements are:
>> First, the defendant was at least three years older than the victim;
>> Second, who knowingly and intentionally;

9

   <u>Third</u>, made any written or electronically generated lewd or indecent proposal;
   <u>Fourth</u>, to any child under sixteen years of age, or other individual the person believes to be a child under sixteen (16) years of age;
   <u>Fifth</u>, for the child to have unlawful sexual relations with any person.
The words "lewd" and "lascivious" have the same meaning and signify conduct which is lustful and which evinces an eagerness for sexual indulgence.

(Doc. 8-7, O.R. at 98, Instruction No. 21, citing OUJI CR 4-129). That instruction tracks Okla. Stat. tit. 21, § 1123(A)(1). For Count III, the charged conduct was "asking [K.G.] to meet him for the purpose of having sexual intercourse." *See* Doc. 8-4, Tr. Vol. I at 299. As to Count III, Petitioner's jury was instructed that:

   No person may be convicted of lewd or indecent proposals to a child under sixteen unless the State has proved beyond a reasonable doubt each element of the crime. These elements are:
   <u>First</u>, the defendant was at least three years older than the victim;
   <u>Second</u>, who knowingly and intentionally;
   <u>Third</u>, asked;
   <u>Fourth</u>, any child under sixteen years of age, or other individual the person believes to be a child under sixteen (16) years of age;
   <u>Fifth</u>, to go alone with any person;
   <u>Sixth</u>, to a secluded place;
   <u>Seventh</u>, with the unlawful and willful intent and purpose;
   <u>Eighth</u>, to commit Rape in the Second Degree.
   The words "lewd" and "lascivious" have the same meaning and signify conduct which is lustful and which evinces and eagerness for sexual indulgence.

(Doc. 8-7, O.R. at 99, Instruction No. 22, citing OUJI CR 4-129). That instruction tracks Okla. Stat. tit. 21, § 1123(A)(3). Thus, the elements of the two offenses charged in Counts II and III are not identical because they are based on two (2) different subsections of Okla. Stat. tit. 21, § 1123, and the State presented different evidence to prove the conduct supporting each count. Thus, the double jeopardy clause is not implicated. In addition, the OCCA's denial of relief on Petitioner's double jeopardy claim is entitled to deference. *Richter*, 562 U.S. at 99. Petitioner fails to demonstrate that the OCCA's rejection of this claim was contrary to, or an unreasonable application of, clearly

10

established federal law as determined by the Supreme Court.  Petitioner is not entitled to relief under 28 U.S.C. § 2254(d) on his claim that his convictions on Counts II and III violate the double jeopardy clause, as raised in Ground 1.

### 2.  Sufficiency of the evidence (Ground 6)

In Ground 6, Petitioner claims that the State failed to prove beyond a reasonable doubt that Petitioner was not entrapped.  *See* Doc. 1 at 10.  On direct appeal, Petitioner argued that "[n]o rational trier of fact could have found that *at the time law enforcement became involved* he was already predisposed to use his cell phone to contact a 14-year-old girl and send photographs of his erect penis and/or offer, ask, encourage, or entice her to meet him in a secluded place for sexual intercourse."  *See* Doc. 7-1 at 7 (emphasis in original).  The OCCA rejected this claim, as follows:

> once the defense of entrapment is properly raised, the burden of proving the nonexistence of the defense beyond a reasonable doubt rests on the State.  *McInturff v. State*, 1976 OK CR 226, ¶ 11, 554 P.2d 837, 841.  The State met its burden in this case of proving beyond a reasonable doubt that Appellant was ready and willing to commit the offense of lewd or indecent proposal to a child and facilitating sexual conduct with a minor by use of a computer and that he was not entitled to the defense of entrapment.  Viewing the evidence in this case in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crimes charged beyond a reasonable doubt.  *Rutan v. State*, 2009 OK CR 3, ¶ 49, 202 P.3d 839, 849 *citing Easlick v. State*, 2004 OK CR 21, ¶ 15, 90 P.3d 556, 559; *Spuehler v. State*, 1985 OK CR 132, ¶ 7, 709 P.2d 202, 203-204.

(Doc. 7-3 at 2-3).

In a habeas proceeding, this Court reviews the sufficiency of the evidence "in the light most favorable to the prosecution" and ask whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  This standard of review respects the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the testimony

11

presented at trial.  *Id.*  Both direct and circumstantial evidence are considered in determining whether evidence is sufficient to support a conviction.  *Lucero v. Kerby*, 133 F.3d 1299, 1312 (10th Cir. 1998).  In evaluating the evidence presented at trial, the Court does not weigh conflicting evidence or consider witness credibility.  *Wingfield v. Massie*, 122 F.3d 1329, 1332 (10th Cir. 1997); *Messer v. Roberts*, 74 F.3d 1009, 1013 (10th Cir. 1996).  Instead, the Court must view the evidence in the "light most favorable to the prosecution," *Jackson*, 443 U.S. at 319, and "accept the jury's resolution of the evidence as long as it is within the bounds of reason." *Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993).  Further, the Court evaluates the sufficiency of the evidence by "consider[ing] the collective inferences to be drawn from the evidence as a whole." *U.S. v. Hooks*, 780 F.2d 1526, 1532 (10th Cir. 1986).  Under the AEDPA, the Court must decide whether the OCCA's decision that there was sufficient evidence to support a finding of guilt was contrary to, or an unreasonable application of, *Jackson*.  28 U.S.C. § 2254(d)(1); *Spears v. Mullin*, 343 F.3d 1215, 1238-39 (10th Cir. 2003).

An entrapment defense requires a showing of "government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct." *Mathews v. U.S.*, 485 U.S. 58, 63 (1988).  Moreover, "it is very unlikely that [a] defendant will be able to prove entrapment without testifying." *Id.* at 65 (internal citation omitted).  Here, Petitioner did not testify, nor did Petitioner present any other evidence to suggest that he was an otherwise innocent person who was not predisposed to engaging in this type of criminal activity.  In contrast, the State presented evidence demonstrating that Petitioner, who was thirty-one (31) years old, was willing to commit the crimes charged and purposely initiated contact with thirteen (13) year old K.G. on November 11, 2009, by borrowing her cell phone and using it to obtain her number.  Petitioner then

12

promptly began texting K.G.  Furthermore, the nature of the texts sent by Petitioner demonstrates a clear willingness to engage in the criminal conduct.  That evidence defeats any claim that Petitioner lacked a predisposition to engage in the criminal conduct.

The evidence, when viewed in the light most favorable to the prosecution, was sufficient for any rational trier of fact to have found the nonexistence of entrapment beyond a reasonable doubt. The OCCA's decision rejecting Petitioner's challenge to the sufficiency of the evidence demonstrating that entrapment did not occur was not an unreasonable application of Supreme Court precedent, nor did the decision rest on an unreasonable determination of the facts presented at Petitioner's trial. 28 U.S.C. § 2254(d)(1),(2); *Dockins v. Hines*, 374 F.3d 935, 939 (10th Cir. 2004). Therefore, habeas corpus relief is denied on Ground 6.

### 3.  Erroneous jury instructions (Grounds 7 and 8)

In Ground 7, Petitioner claims that the trial judge erred in not instructing on "sentence entrapment."  *See* Doc. 2 at 36.  The defense of "sentence entrapment" applies "to those situations where one admittedly predisposed to a criminal activity is enticed into committing a greater crime of the same general character."  *See Leech v. State*, 66 P.3d 987, 990 (Okla. Crim. App. 2003).  In Ground 8, Petitioner claims that Instruction No. 26 was contradictory, confusing and unconstitutionally shifted the burden of proof.  *See* Doc. 2 at 40.  The OCCA considered these claims on direct appeal and ruled as follows:

> Appellant's jury appropriately received the uniform jury instructions on entrapment.  However, Appellant was not entitled to the defense of sentence entrapment.  This defense applies to situations where "the defendant, although intending to commit a lesser offense, has been entrapped into committing a greater offense."  *Leech v. State*, 2003 OK CR 4, ¶ 12, 66 P.3d 987, 990.  *See also Soriano v. State*, 2011 OK CR 9, ¶ 39, 248 P.3d 381, 397.  There is no evidence suggesting that Appellant was an "unwary innocent" being "unfairly enticed or duped into the crime at issue."  *Soriano*, 2011 OK CR 9, ¶ 35, 248 P.3d at 396.  "[A]bsent

13

countervailing evidence suggesting [Appellant's] unpreparedness or unwillingness to commit the crime at issue" of which there is none in this case, "the very commission of the criminal act, by itself, adequately establishes [Appellant's] predisposition – thereby defeating the entrapment defense." *Id.*

In Proposition II, we find no error and thus no plain error in the trial court's omission of an instruction on sentencing entrapment. *See Hogan v. State*, 2006 OK CR 19, ¶ 38, 139 P.3d 907, 923. To the extent Appellant's argument is that he was entrapped into committing multiple counts of the same offense, not that he was entrapped into committing more serious offenses than he was originally predisposed to commit, his case does not fit within the definition of sentence entrapment. Even if his argument does fit within the concept of sentencing entrapment, the evidence was insufficient to support such a claim. *See Davis v. State*, 2011 OK CR 29, ¶ 94, 268 P.3d 86, 114 (*prima facie* evidence meeting the legal criteria for the defense must be presented in order to warrant giving of jury instruction). Therefore, no instruction was warranted.

Further, we find no error and thus no plain error in Instruction No. 26. The instruction was taken verbatim from 21 O.S.2001, § 1123(E). While not a uniform instruction, its content is contained in the standard entrapment instruction, Oklahoma Uniform Jury Instructions – Criminal 2d 8-25. Whether read singly or in context of the other instructions, No. 26 was neither confusing nor contradictory nor did it unconstitutionally shift the burden of proof.

(Doc. 7-3 at 3-4).

In general, matters concerning jury instructions are considered questions of state law and are not proper subjects of federal habeas corpus review under 28 U.S.C. § 2254. *Patton v. Mullin*, 425 F.3d 788, 807 (10th Cir. 2005); *see Rose v. Hodges*, 423 U.S. 19, 22 (1975) (stating federal habeas relief is not permitted for state law errors). It is well established that "errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, unless they are so fundamentally unfair as to deprive petitioner of a fair trial and [] due process of law." *Nguyen v. Reynolds*, 131 F.3d 1340, 1357 (10th Cir. 1997) (internal quotation marks and citation omitted); *see Maes v. Thomas*, 46 F.3d 979, 984 (10th Cir. 1995) ("A state conviction may only be set aside in

14

a habeas proceeding on the basis of erroneous jury instructions when the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial." (citation omitted)).

To determine whether Petitioner was deprived of a fundamentally fair trial and due process of law, the Court must consider the challenged jury instructions "in the context of the instructions as a whole and the trial record" and ask if "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Estelle*, 502 U.S. at 72 (internal quotation marks and citations omitted). "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Maes*, 46 F.3d at 984 (internal quotation marks and citation omitted). "In reviewing an ambiguous instruction . . . we inquire 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." *Estelle*, 502 U.S. at 72 (citation omitted). The Court also considers that:

> [j]urors do not sit in solitary isolation booths parsing instructions for subtle shades of meaning in the same way that lawyers might. Differences among them in interpretation of instructions may be thrashed out in the deliberative process, with commonsense understanding of the instructions in the light of all that has taken place at the trial likely to prevail over technical hairsplitting.

*Boyde v. California*, 494 U.S. 370, 380-81 (1990).

In this case, neither the omission of an instruction on sentence entrapment nor Instruction No. 26 rendered Petitioner's trial fundamentally unfair in violation of due process. First, as to Petitioner's claim that the trial judge erred in failing to instruct on "sentence entrapment," the evidence presented at trial simply does not support Petitioner's claim that he was entitled to an instruction on sentence entrapment. Second, as to Petitioner's claims regarding Instruction No. 26, the Court finds that when read in the context of the instructions as a whole and the trial record, the

15

instruction was not confusing and did not unconstitutionally shift the burden of proof.  Instruction

No. 26 reads as follows:

> The fact that an undercover operative law enforcement officer was involved
> in the detection and investigation of an offense pursuant to this section shall not
> constitute a defense to a prosecution under this section.

(Doc. 8-7, O.R. at 103, Instruction No. 26, citing Okla. Stat. tit. 21, § 1123(E)).  Rather than

generate confusion, the instruction served to clarify the significance of the involvement of the police,

especially when read in conjunction with Instruction No. 28 (*id.*, O.R. at 105, citing OUJI CR-8-25),

regarding the defense of entrapment.  Furthermore, Instruction No. 26 did not shift the burden of

proof nor did it eliminate the defense of entrapment, as alleged by Petitioner.  Instruction No. 28

directed that the defense of entrapment is a "good defense" if the jury found that the defendant "had

no previous intent or purpose to commit any offense of the character here charged, and did so only

because he was induced or persuaded by some agent of the police . . . ."  *Id.*  Thus, in the context of

the instructions as a whole, Petitioner's trial was not rendered fundamentally unfair by the wording

of Instruction No. 26.

Petitioner has failed to demonstrate that the OCCA's adjudication of the claims raised in

Grounds 7 and 8 was contrary to, or an unreasonable application of, clearly established federal law

as determined by the Supreme Court.  Petitioner's request for habeas relief on Grounds 7 and 8 is

denied.

**C.  Procedural bar (part of Ground 1, Grounds 2-5)**

As part of Ground 1, Petitioner alleges that his convictions on Counts 2, 3, and 4 violate the

double jeopardy clause.  Although Petitioner claimed on direct appeal that his convictions on both

Counts 2 and 3 violated the double jeopardy clause, Petitioner has never presented a claim to the

state courts that his conviction on Count 4 also violated the double jeopardy clause.  Similarly, Petitioner has never presented Ground 2 to the state courts.  Because the OCCA would impose a procedural bar on those claims if Petitioner were to return to state court to file a second application for post-conviction relief, the claims are subject to an anticipatory procedural bar.

In addition, the issues raised in Grounds 3, 4, and 5 were not presented to the OCCA on direct appeal.  Petitioner presented those claims to the state courts for the first time in his post-conviction proceeding.[4]  In denying relief on procedural bar grounds, the state district court found that Petitioner's claims could have been raised on direct appeal, but were not.  *See* Doc. 7-5 at 2. The OCCA affirmed the denial of relief on procedural grounds, citing Okla. Stat. tit. 22, § 1086, and finding that "Petitioner has not established any sufficient reason why the grounds were not asserted or were inadequately raised in his prior proceedings."  *Id.*  In response to the petition, Respondent asserts that this Court should uphold the procedural bar imposed by the OCCA as to Petitioner's claims first raised on post-conviction appeal.

The doctrine of procedural bar prohibits a federal court from considering a specific habeas claim where the state's highest court declined to reach the merits of that claim on independent and adequate state procedural grounds, unless a petitioner "demonstrate[s] cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate[s] that failure to

---

[4]      Although Petitioner raised his Ground 5 claim alleging improper execution of a search warrant in his application for post-conviction relief, *see* Doc. 14 at 22-24, and in his post-conviction petition in error, *see* Doc. 7-4 at 2, neither the state district court nor the OCCA acknowledged the claim in the orders denying post conviction relief, *see* Doc. 7-4 at 6; Doc. 7-5 at 2.  The OCCA's post-conviction ruling, however, was based on Petitioner's failure to raise the post-conviction claims on direct appeal.  That ruling extends to the claim alleging improper execution of a search warrant because the claim could have been, but was not, raised on direct appeal and was, therefore, procedurally barred.  Thus, the Ground 5 claim raised in this habeas corpus proceeding is subject to a procedural bar.

consider the claim[] will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 724 (1991); *see also Maes*, 46 F.3d at 985; *Gilbert v. Scott*, 941 F.2d 1065, 1067-68 (10th Cir. 1991). "A state court finding of procedural default is independent if it is separate and distinct from federal law." *Maes*, 46 F.3d at 985. A finding of procedural default is an adequate state ground if it has been applied evenhandedly "in the vast majority of cases." *Id.* (internal quotation marks and citation omitted).

Here, the Court finds that Grounds 3, 4, and 5 are procedurally barred. The OCCA's procedural bar based on Petitioner's failure to raise the claims on direct appeal is an "independent" state ground because it "was the exclusive basis for the state court's holding." *Maes*, 46 F.3d at 985. Additionally, the procedural bar was based on an "adequate" state ground sufficient to bar the claims. *See Ellis v. Hargett*, 302 F.3d 1182, 1186 (10th Cir. 2002) (stating that Okla. Stat. tit. 22, § 1086, "is an independent and adequate state ground for denying habeas relief"). For those same reasons, the unexhausted claim in Ground 2 and the unexhausted portion of Ground 1 are also procedurally barred.

This Court may not consider the defaulted claims unless he is able to show "cause and prejudice" for the procedural default or demonstrate that a fundamental miscarriage of justice would result if his claims are not considered. *See Coleman*, 501 U.S. at 750; *Demarest v. Price*, 130 F.3d 922, 941-42 (10th Cir. 1997). The cause standard requires a petitioner to "show that some objective factor external to the defense impeded . . . efforts to comply with the state procedural rules." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Examples of such external factors include the discovery of new evidence, a change in the law, and interference by state officials. *Id.* As for prejudice, a petitioner must show "actual prejudice resulting from the errors of which he complains."

*U.S. v. Frady*, 456 U.S. 152, 168 (1982).  A "fundamental miscarriage of justice" instead requires

a petitioner to demonstrate that he is "actually innocent" of the crime of which he was convicted.

*McCleskey v. Zant*, 499 U.S. 467, 494 (1991).

Petitioner makes a general statement in his brief in support of the petition that the failure to

raise Ground 3 on direct appeal is attributable to ineffective assistance of appellate counsel.  *See*

Doc. 2 at 15.  To the extent Petitioner alleges appellate counsel was the cause for his procedural

default, *see* Doc. 14 at 4-5, it is well-established that in certain circumstances, counsel's

ineffectiveness can constitute "cause" sufficient to excuse a state prisoner's procedural default.

*Carrier*, 477 U.S. at 488-89.  However, the assistance provided by appellate counsel must rise to the

level of a constitutional violation.  *Id.*  Furthermore, the ineffective assistance of appellate counsel

claim asserted as "cause" must be presented to the state courts as an independent claim before it may

be used to establish cause for a procedural default.  *Id.* at 489.  In this case, Petitioner has never

presented a claim of ineffective assistance of appellate counsel to the state courts.  Therefore,

Petitioner's claim that appellate counsel provided ineffective assistance in failing to raise the

defaulted claims on direct appeal is itself unexhausted and may not serve as "cause" to overcome

the procedural bar.  *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000).  Petitioner offers no

explanation for failing to raise an ineffective assistance of appellate counsel claim in his post-

conviction proceeding and has not otherwise demonstrated cause and prejudice for the procedural

default of his claims.

Petitioner's only other means of gaining federal habeas review of his defaulted claims is a

claim of actual innocence under the fundamental miscarriage of justice exception.  *Herrera v.*

*Collins*, 506 U.S. 390, 403-404 (1993); *Sawyer v. Whitley*, 505 U.S. 333, 339-341 (1992); *see also*

*Schlup v. Delo*, 513 U.S. 298 (1995).  To meet this test, a criminal defendant must make a colorable showing of factual innocence.  *Beavers v. Saffle*, 216 F.3d 918, 923 (10th Cir. 2000) (citing *Herrera*, 506 U.S. at 404).  Under *Schlup*, a showing of innocence sufficient to allow consideration of procedurally barred claims must be "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error . . . ."  *Schlup*, 513 U.S. at 316.  Petitioner has the burden of persuading this Court "that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt."  *Id.* at 329.

In his reply, Petitioner claims that he should have been charged with a single violation of the provisions of Okla. Stat. tit. 21, § 1040.13a, "making him innocent of the crimes of counts 1-3 for which he was convicted."  *See* Doc. 14 at 2.  However, "actual innocence" refers to factual innocence and not mere legal sufficiency.  *Bousley v. U.S.*, 523 U.S. 614, 623-24 (1998).  Petitioner challenges the legal sufficiency of his convictions and does not assert that he is actually innocent of the crimes for which he was convicted.  As a result, the Court finds the fundamental miscarriage of justice exception is inapplicable in this case.

Accordingly, because Petitioner has not demonstrated "cause and prejudice" or that a "fundamental miscarriage of justice" will result, the Court concludes that it is procedurally barred from considering the merits of Petitioner's defaulted claims.  *Coleman*, 510 U.S. at 724. Habeas corpus relief on those grounds shall be denied.

### *CONCLUSION*

After carefully reviewing the record in this case, the Court concludes that Petitioner has not established that he is in custody in violation of the Constitution or laws or treaties of the United States.  His petition for writ of habeas corpus shall be denied.

### Certificate of Appealability

Rule 11, *Rules Governing Section 2254 Cases in the United States District Courts*, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  The Court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the Court "indicate[s] which specific issue or issues satisfy [that] showing." 28 U.S.C. § 2253.  A petitioner can satisfy the standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings.  *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (citation omitted).  In addition, when the Court's ruling is based on procedural grounds, Petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

After considering the record in this case, the Court concludes that a certificate of appealability should not issue. Nothing suggests that the Tenth Circuit would find that this Court's application of AEDPA standards to the decision by the OCCA was debatable amongst jurists of reason. *See Dockins*, 374 F.3d at 937-38.  As to the claims denied on a procedural basis, Petitioner has failed to satisfy the second prong of the required showing, i.e., that the Court's ruling resulting

in the denial of the petition on procedural grounds was debatable.  A certificate of appealability shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1.      The Clerk of Court shall note the substitution of Joe M. Allbaugh, Director, in place of Robert C. Patton, Director, as party respondent.

2.      The petition for a writ of habeas corpus (Doc. 1) is **denied**.

3.      A certificate of appealability is **denied**.

4.      A separate Judgment shall be entered in this case.

ORDERED THIS 24th day of March, 2017.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE